# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.D.L. M., by and through his guardian ad litem, MALLORY WAFER,<br><br>Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 08-cv-1482-JLT<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY COMPLAINT (DOC. 1)<br><br>ORDER DIRECTING THE ENTRY OF JUDGMENT FOR DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF D.D.L.M. |

## BACKGROUND

In this action, Plaintiff D.D.L.M.[1] ("Claimant" or "Plaintiff"), is a child who is proceeding through his guardian ad litem Mallory Wafer. Plaintiff seeks judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying his claim for child's supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). On October 1, 2008, Plaintiff's complaint was filed in the United States District Court for the Eastern District of California. (Doc. 1). Plaintiff filed his opening brief on July 2, 2009. (Doc. 20). The Commissioner filed his opposition brief on July 23, 2009. (Doc. 21). In October 2008, the parties

---

[1] According to Local Rule 140(a)(1), the child's name is redacted because his identity is not necessary to the action.

consented to the jurisdiction of the Magistrate Judge.  (Docs. 12, 13)

**FACTS AND PRIOR PROCEEDINGS[2]**

On April 20, 2006, Plaintiff filed an application for child's supplemental security income benefits under Title XVI of the Act.  AR at 85.  Plaintiff alleged that he had been under a disability since his date of birth on May 18, 2005, due to disabling physical problems.  Id.  After initial denial of his request for benefits by the Agency, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 65.  On February 19, 2008, the ALJ held a hearing, and on May 29, 2008, denied benefits.  Id. at 11-24.  Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  Id. at 24.  The Appeals Council denied review on July 22, 2008.  Id. at 5-7.

Hearing Testimony

The hearing was held on February 19, 2008.  AR at 25.  Plaintiff, his mother Mallory Wafer, and his attorney, Melissa Prudian, appeared.  Id.

Plaintiff testified briefly but did not provide any substantive information concerning his condition.  AR at 28-29.  Generally, he gave the impression of a happy, healthy child a little less than three years old.  See id.

Plaintiff's mother, Mallory Wafer ("Mallory") was questioned by Plaintiff's attorney.  She stated that Plaintiff was born prematurely.  AR at 30.  Plaintiff had surgery when he was two months old because blood was not flowing properly through his heart valves.  Id. at 31.  He was also prescribed  medication at that time.  Id.

Ms. Wafer testified that besides a heart murmur he has no other heart problems and is now receiving checkups only once a year, although previously, he was seen for checkups every 3-6 months.  AR at 38.  He was last seen by their treating physician, Dr. Walls, in October, 2007.  Id. at 41.  His next appointment is set for October, 2008.  Id.  He may have to have additional surgery for his heart condition when he is about seven years old.  Id. at 35.  He is not currently taking any medication.  Id. at 34.

Ms. Wafer stated that if Plaintiff "runs around" for more than about 15-20 minutes, he turns

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

bright red and starts sweating and wheezing. AR at 32. This only happens when he is "running around." Id. at 33. He also wheezes at night. Id. at 32. He must avoid getting hot because this makes him sweaty and nauseous. Id. at 33. Besides some breathing trouble, Plaintiff suffers only "ordinary" ills like cold and flu. Id. at 41.

Ms. Wafer stated that Plaintiff doesn't usually go to sleep until about 2 a.m., although he is put to bed usually by about 10 p.m. AR at 37. He consumes more liquids than solid food. Id. at 36. He is not currently in preschool because his treating physician, Dr. Walls, recommended that he wait until his specialist approves it because of the possibility he might pick up germs which could affect his heart condition. Id. at 33. He likes to watch Happy Feet on television and dances to the music. Id. at 38. Ms. Wafer's mother helps her care for Plaintiff. Id. at 39. Plaintiff's father lives in the area and sees him on weekends. Id.

Medical Record

Plaintiff was born on May 18, 2005 and was premature (35 weeks). AR at 188. He had respiratory distress and required intubation. Id. Doctors determined that he had a heart murmur and recommended a cardiac consultation. Id.

The same day, Plaintiff was seen by Dr. Kenneth Roillard who determined that the child's echocardiograph ("EKG") revealed a tetralogy of fallot.[3] AR at 189. Plaintiff's respiratory distress was alleviated with one dose of Surventa. Id. at 185. Dr. Rouillard confirmed his diagnosis of tetralogy of fallot in a follow-up EKG on June 2, 2005. AR at 177. In light of Plaintiff's premature birth, he believed the best course was to delay any corrective surgery for two to three months to allow Plaintiff to maximize his growth, unless the severity of his pulmonary valve stenosis worsened. Id. at 175.

On July 26, 2005, cardiologist Dr. Edwin Pedrossian performed corrective surgery on Plaintiff's heart. AR at 156-57. Plaintiff tolerated the surgery without complications and Dr.

---

[3] Tetralogy of Fallot is heart condition with the following traits: (1) ventricular septal defect (a hole between the ventricles of the heart); (2) obstruction from the right ventricle and the lungs (pulmonary stenosis); (3) the aorta lies directly over the ventricular septal defect; and (4) the right ventricle develops thickened muscle. See MedicineNet.com, Definition of Tetralogy of Fallot. The defect causes oxygen-poor blood to be pumped throughout the body but can be corrected by surgery.

Rouillard noted in an August 10, 2005 report that his mother stated that he was doing well and was asymptomatic from a cardiac standpoint. Id. at 136. In his examination, Dr. Rouillard found Plaintiff to be a healthy, acyanotic infant with no distress, no increased respiratory effort or wheezing and described his surgical incision as well-healed. Id. at 137. He characterized Plaintiff as continuing to recover well and was hopeful that his mild residual subvalvar and valvar pulmonary stenosis would continue to improve. Id.

Notes from a September 27, 2005 examination by Dr. Charlotte Clark-Neitzel of the Sea Mar Community Health Clinic, recount Plaintiff's mother describing him as "thriving and feeling well." AR at 200. Dr. Clark-Neitzel noted a smiling, playful baby in no apparent distress. Id.

In a November 17, 2005 follow-up, Dr. Donald Trippel, also with Sea Mar, found no apparent chronic medical problems and described Plaintiff as "a vigorous-appearing infant" with no respiratory distress. AR at 198. Although he recounted Plaintiff as having an upper respiratory infection, he stated that his ventricular function was good with no residual ventricular septal defect, mild pulmonary valve stenosis and mild to moderate pulmonary insufficiency. Id. at 199. Nevertheless he concluded that Plaintiff is "doing well" and believed he would continue to do well but warned of the possibility for worsening of his stenosis and pulmonary insufficiency, necessitating a follow-up cardiac exam. Id.

A December 2005, report filed with the Washington State Department of Social Services (where Plaintiff lived at the time) noted that Plaintiff had a cold with noisy congested breathing but described his cardiac function and his growth development as normal. AR at 196. A February 2006 report described Plaintiff as "very playful" and noted that he was still "raspy" but had no distress. Id. at 194.

In July 2006, consulting expert Dr. De la Rosa, filled out a Childhood Disability Evaluation Form for the Social Security Administration. Dr. De la Rosa described Plaintiff's impairment as "severe" but concluded it did not meet, equal or functionally equal the listings for presumed disability. AR at 207. Dr. De la Rosa described Plaintiff's health and physical well-being as "less than marked" and "s/p surgical repair of acyanotic tetrology of fallot with good growth development post surgery." Id. at 210. In January 2007, a "Case Analysis" by another SSA consultant, Dr. M.O.

Nawar, affirmed Dr. De la Rosa's opinion. Id. at 214, 216.

In June 2006, a report from the Family Care Providers Medical Group, Inc., described Plaintiff as "well nourished and developed" with no heart murmurs and a regular rhythm and normal lung function. AR at 229. Follow-up assessment from this organization in September 2006, April 2007 and October 2007, revealed similar findings. See id. at 223, 225 and 227. The April 2007 report noted also that Plaintiff "walks alone fast," climbs and has a 7-20 word vocabulary. Id. at 225. The October 2007 report notes he "runs well," kicks and throws a ball, plays hide and seek and is able to put 2-3 words together. Id. at 223.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to

permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

**REVIEW**

In determining disability in children with respect to SSI benefits, the SSA will consider whether the child is performing substantial gainful activity. If not, the SSA must consider whether an impairment or combination of impairments is severe and if severe, whether the impairments meet, medically equal, or functionally equal the listings.

Finally, the SSA must determine whether such impairments have lasted, or are expected to last, for twelve continuous months. 20 C.F.R. §§ 416.923, 416.924(a). If the child's impairment meets or functionally equals an impairment in the listings and meets the durational requirement, then disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 416.924(d). If the impairment does not meet or functionally equal a listed impairment or meet the durational requirement, then the child is not disabled. 20 C.F.R. § 416.924(d)(2). To determine whether an impairment or combination of impairments functionally equals any listing, the ALJ was required to evaluate the child's ability to acquire and use information, to attend to and complete tasks, to interact and relate with others, to move about and manipulate objects, to care for himself and the child's health and well-being. 20 CFR 416.926a(b)(1)(i)-(vi).. The child must have marked[4] limitations in two of these domains of functioning or an extreme limitation in one domain. Id.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the 3-step sequential evaluation for eligibility for child benefits. After determining that Plaintiff had not engaged in substantial gainful activity (Step One), he noted at Step Two that Plaintiff's tetrology of fallot was a"severe" impairment within Agency regulations. AR at 17. However, at Step Three, he concluded that this impairment did not meet or equal, or functionally equal the level required under Agency listed impairments. Id.

In reaching this conclusion, the ALJ addressed Plaintiff's physical impairment (tetrology of fallot) under the six domains previously noted. With respect to each of the first five domains, he

---

[4]A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 CFR 416.926a(e)(2). It means "'more than moderate' but 'less than extreme.'" Id. On the other hand, an "extreme" limitations "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 CFR 416.926a(e)(3). It is the rating given to the "worst limitations." Id.

6

concluded that Plaintiff had no limitation resulting from his impairment. AR at 18-23. With respect to the sixth domain (physical health and well-being), he determined that Plaintiff's limitation was "less than marked." Id. at 23. As a result, he concluded that Plaintiff was not disabled under the Act. Id. at 24.

**DISCUSSION**

<u>The ALJ Properly Discounted Mallory Wafer's Symptom Testimony</u>

Plaintiff, via his guardian ad litem, raises one claim of error on appeal. He contends that the ALJ improperly discounted the symptom testimony of himself and his mother. (<u>See</u> Doc. 20 at 4-11). In fact, review of the record shows that Plaintiff, who was not three years old at the time of the hearing, provided no testimony concerning the degree of his condition or his symptoms. All testimony in this respect was presented by his mother, Mallory Wafer. A close read of Plaintiff's brief shows that it is her symptom testimony that he contends was improperly discounted by the ALJ. (<u>See</u> Doc. 20 at 5-11).

Lay witness testimony, such as Mallory Wafer's, is competent evidence which the Commissioner must take into account. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject the testimony of lay witnesses "only if he gives reasons germane to each witness whose testimony he rejects." <u>Id</u>. at 919; <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Plaintiff does not precisely identify what symptom testimony was rejected by the ALJ. The ALJ has not specifically identified that testimony either. However, he does state in his decision that "considering the evidence of record, I find . . . that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible." AR at 18. The Court notes that at the hearing, Plaintiff's mother testified that Plaintiff could only run around for about 15-20 minutes at a time, after which he began to turn red and started to sweat and wheeze. Id. at 32. In addition, she stated that she has to keep Plaintiff from getting too hot or he would start to sweat and become nauseous. Id. at 32-33. Plaintiff contends that in discounting the mother's testimony, the ALJ only stated a belief "that the objective medical evidence did not support the level of limitations Ms. Wafer describes and that the daily activities are inconsistent with disability." (Doc. 20 at 8.) Plaintiff asserts this is an insufficient basis for discounting her testimony.

7

The Court disagrees. Review of the ALJ's decision reveals specific, detailed and germane reasons based on substantial evidence in the record for discounting Ms. Wafer's symptom testimony and finding that Plaintiff was not disabled. The ALJ did not merely contend that her symptom testimony was not supported by objective evidence. He specifically identified evidence to support this conclusion.

For instance, the ALJ cited examinations of Plaintiff in 2006 and 2007 indicating that he had normal growth and development, a 20-word vocabulary, ran well, walked up and down, kicked and threw a ball and walked alone fast, to support his findings of no limitations with respect to the first five domains and a "less than marked limitation" with respect to the sixth (physical health and well-being). See AR at 223. 225. 227 and 229. Based on his own observation of Plaintiff at the hearing, he noted that Plaintiff played games such as peek-a-boo and appeared to be a typical two-year old who was affectionate and interactive and full of life and energy. Id. at 21. He noted that Ms. Wafer herself indicated that Plaintiff had good mobility and dexterity. He observed also that Plaintiff had no difficulty walking and jumping up to the bench level at the hearing. Id. at 22. The ALJ further noted that Plaintiff was able to feed himself and cited Ms. Wafer's testimony that he was taking no medications of any kind at the time of the hearing and was not scheduled for another medical appointment for another eight months, a full year after his last appointment. See id. at 18-19. In addition, he cited the findings of the two State Agency physicians that Plaintiff had no marked limitations that would support a finding that his impairment met, equaled or functionally equaled the listings of impairments. Id. at 19.

Review of the medical evidence supports the ALJ's findings. In the immediate aftermath of Plaintiff's corrective surgery in July, 2005, medical reports indicated that Plaintiff had no complications, was improving well and that his growth and development were progressing. See AR at 136-37. Ms. Wafer told a doctor in September 2005, that Plaintiff was "thriving and feeling well." Id. at 200. In follow-up examinations in November and December, 2005, doctors indicated Plaintiff was a "vigorous appearing infant" who was "doing well" and had no respiratory distress despite his condition. Id. at 196, 198-99. In February, 2006, a report stated that Plaintiff was "very playful" and had normal cardiac function with no sign of distress. Id. at 194.

As noted by the ALJ, a July 2006 report prepared for the SSA by a non-examining medical consultant concluded that Plaintiff's impairment, although "severe," did not meet, equal or functionally equal the listings of impairments required for a finding of disability. AR at 207. Another non-examining consultant agreed. Id. at 214, 216. In contrast, Plaintiff has failed to cite any opinion of a treating, examining or non-examining consulting physician stating that Plaintiff's disability was so severe as to compromise his ability to function normally in any of the six domains analyzed by the ALJ, let alone support the testimony of Ms. Wafer as to his physical limitations.

Moreover, the fact that Plaintiff takes no medications for his condition, a fact cited by the ALJ, is supportive of a finding that Ms. Wafer's symptom testimony is less than credible. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); see also Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993). In fact, the record indicates that Plaintiff's post-surgery treatment has been conservative and medical evaluations generally show steady improvement in terms of both growth and development and a lessening of symptoms. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (same): Matthews, 10 F.3d at 679 (finding claimant's symptom testimony incredible in light of the "conservative" nature of his treatment).

Finally, the Court notes that Ms. Wafer's testimony is vague and not necessarily inconsistent with the ALJ's conclusion that Plaintiff is not disabled. She testified that Plaintiff would become red-faced, sweaty and wheeze if engaged in strenuous activity for a period of 15-20 minutes and that if he became hot he would sweat and become nauseous. See AR at 32-33. These rather vague descriptions, without more, are not necessarily unusual, particularly for a child under age three, nor are they conclusive of the question of disability. In his brief, Plaintiff fails to identify why these statements provide evidence supporting a view that his impairment meets or equals the Agency listings of impairments. Without more, such vague claims are insufficient to overturn the ALJ's findings. See Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) ("Beyond its bold assertion, [Plaintiff] provides little if any analysis to assist the court in evaluating its legal challenge"); Hibbs v. Department of Human Resources, 273 F.3d 844, 873 n. 34 (9th Cir.

2001) (finding argument too undeveloped to be capable of assessment).

## **CONCLUSION**

For all these reasons, the Court concludes that the ALJ properly presented germane reasons for discounting Ms. Wafer's symptom testimony. Moreover, he has cited substantial evidence in the record to support his finding that Plaintiff is not disabled under the applicable Agency guidelines.

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Dominiq D.L. Mayberry.

IT IS SO ORDERED.

Dated: **February 12, 2010**                        /s/ Jennifer L. Thurston
                                                    UNITED STATES MAGISTRATE JUDGE